IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IULIAN BODNARI, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Civil Action No. 3:24-163 |
| | ) Judge Stephanie L. Haines |
| KRISTI NOEM, *Secretary of the U.S.* | ) Magistrate Judge Keith A. Pesto |
| *Department of Homeland Security, et al.*, | ) ) |
| Respondents. | ) ) ) |

**MEMORANDUM OPINION**

On August 22, 2024, pro se Petitioner Iulian Bodnari filed a Petition for Writ of Habeas Corpus. (ECF No. 4). Presently before the Court is Petitioner's "Motion for Temporary Restraining Order[,] Immediate Release Pursuant to *Lucas v. Hadden*, and/or Order to Show Cause" (the "TRO Motion"), which he filed on December 26, 2024. (ECF No. 16).

Petitioner is a native of Romania, who has been detained in the custody of the United States Immigration and Customs Enforcement ("ICE") since November 3, 2023. (*Id.* at 3–4). With the TRO Motion, Petitioner seeks (i) "a temporary restraining order or preliminary injunction requiring Respondents to release Petitioner," (ii) the Court to "[o]rder Petitioner released from Respondent's custody," (iii) the Court to "[o]rder Respondents to show cause why Petitioner's Verified Petition should not be expeditiously granted," and/or (iv) the Court to "[g]rant Petitioner such other, further and additional relief as the Court deems just and appropriate." (*Id.* at 18–19).

On January 10, 2025, the Government filed its Response in Opposition to the TRO Motion on behalf of the Respondents—Kristi Noem, Secretary of the United States Department of Homeland Security (the "DHS"), the DHS, James R. McHenry III, acting Attorney General of the

United States, David Bryson, the Director of the Philadelphia Field Office of ICE, Warden Leonard Oddo of Moshannon Valley Processing Center, and David O'Neill, Deputy Field Office Director of the Philadelphia Field Office of ICE.[1] (ECF No. 18). The TRO Motion is ripe for disposition.[2] For the following reasons, the Court **DENIES** Petitioner's TRO Motion.

## I. Factual Background

Petitioner was born in Buscani, Romania on February 6, 1970. (ECF No. 18-1 at 4). He entered the United States in New York, New York on March 23, 1984, as a lawful permanent resident. (*Id.*). Since being in the United States, Petitioner has repeatedly violated the law. (*See id.* at 4–6). Notably, in 2003, a Delaware Superior Court found Petitioner guilty of "aggravated felonies," as defined by federal immigration laws. (*Id.* at 5). These felonies included controlled substance trafficking, firearms offenses, forgery, and conspiracy. (*Id.* at 2, 5). The court sentenced Petitioner to over 30 years' imprisonment. (*Id.* at 5).

Upon an early release from his sentence, the DHS took Petitioner into custody, placing him in Moshannon Valley Processing Center (Philipsburg, PA). (ECF No. 16 at 3; ECF No. 18 at 2). On November 3, 2023, the DHS served Petitioner with a Notice to Appear, which charged him as being admitted to the United States but removable under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") because he was convicted of "aggravated felonies" as defined by the INA. (ECF No. 18-2).

---

[1] Plaintiff named Alejandro Mayorkas, former Secretary of the DHS, and Merrick Garland, former U.S. Attorney General, as Defendants in this action. On January 25, 2025, Kristi Noem took office as Secretary of the DHS. On January 20, 2025, James R. McHenry III took office as acting Attorney General. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), the Court has substituted the parties accordingly.

[2] On January 22, 2025, Petitioner filed a "Motion Pursuant to Tolling the Time to Respond to the Respondent[s'] Response" ("Reply Motion") (ECF No. 19). On January 27, 2025, Petitioner filed his "Reply Brief to the Motion for Temporary Restraining Order" (ECF No. 20). Because Petitioner has already filed his Reply Brief, the Court will deny his Reply Motion as moot. The Court has considered Petitioner's Reply Brief, and it does not change the Court's analysis or outcome of this matter.

On April 30, 2024, Petitioner appeared before Immigration Judge Richard Bailey (the "IJ"). (ECF No. 18-3; ECF No. 18-4). There, the IJ found Petitioner removable and ordered him to be removed to Romania. (ECF No. 18-3). Petitioner appealed the IJ's Order of Removal to the Board of Immigration Appeals. (ECF No. 18-5). Appellate Immigration Judge Keith E. Hunsucker dismissed the appeal. (*Id.* at 4). Judge Hunsucker concluded that Petitioner "is not a citizen or national of the United States" and rejected Petitioner's argument that "he may not be removed to Romania [because] he is not a citizen or national of Romania" as an "incorrect statement of law." (*Id.*).

Subsequently, Petitioner filed a Motion to Stay Removal with the United States Court of Appeals for the Third Circuit. (ECF No. 18-6 at 1). Pursuant to the Third Circuit's *Standing Order Regarding Immigration Cases*, dated August 5, 2015, the Third Circuit temporarily granted Petitioner's Motion to Stay on August 5, 2024. (*Id.*). On November 16, 2024, after Respondents filed their Response to Petitioner's Writ of Habeas Corpus (ECF No. 13), the DHS reviewed Petitioner's custody status. (ECF Nos. 18-7–8).

Based on its review of Petitioner's file and pursuant to the factors set forth in 8 C.F.R. § 241.4(e)–(g), the DHS determined that Petitioner would not be released from custody, a determination that the DHS explained in its Decision to Continue Detention. (ECF No. 18-8 at 2). In that document, the DHS relayed to Petitioner that "ICE has determined to maintain your custody because [i] [y]ou have not demonstrated that, if released, you will not pose a danger to the community, to the safety of other persons, or to property[,] [and] [ii] ICE is pending the necessary travel documents to effectuate your removal, and removal is practicable, likely to occur in the reasonably foreseeable future, and in the public interest." (*Id.*).

On December 12, 2024, after considering Petitioner's Motion for Stay of Removal and the

briefing thereof, the Third Circuit denied Petitioner's Motion to Stay Removal and vacated the temporary stay. *Bodnari v. Att'y Gen.*, No. 24-2741, ECF No. 16 (3d Cir. Dec. 12, 2024). The Third Circuit determined that "Petitioner has not shown a likelihood of success on the merits of his petition for review." *Id.* (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Douglas v. Ashcroft*, 374 F.3d 230, 233–34 (3d Cir. 2004)). Thereafter, Petitioner filed his TRO Motion.

## II. Jurisdiction

Title 28, United States Code, Section 2241 grants federal courts the authority to hear habeas corpus matters by noncitizens challenging the lawfulness of their detention by ICE. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018).

## III. Analysis

Preliminary injunctive relief is an "extraordinary remedy" and "should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). A party seeking to obtain such relief—whether through a TRO or a preliminary injunction—must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Id.*

Failure to satisfy the first factor of the analysis—a likelihood of success on the merits— necessitates denial of the injunctive request. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)). It follows that district courts need not address the other factors if the moving party fails to establish the first factor. *See Marvin R.V. v. Tsoukaris*, No. 20-CV-5225, 2020 WL 6689760, at *5 n.2 (D.N.J. Nov. 13, 2020) (collecting Third Circuit cases to support the statement that "[because the p]etitioner has failed to meet his burden with respect to the likelihood of success

on the merits, the Court need not address the remaining factors"); *see also Peter v. Att'y Gen. of New Jersey*, No. 23-CV-3337, 2023 WL 4627866, at *1 (D.N.J. July 19, 2023). Here, Petitioner has failed to establish the likelihood of success on the merits of his claims.

Petitioner does not provide an explicit argument as to why he is likely to succeed on the merits of his Petition for Habeas Corpus. (*See* ECF No. 16 at 13). Rather, he recites statements of law on this factor and concludes that he is likely to succeed on the merits. (*See id.*). Nonetheless, the gravamen of Petitioner's argument on this point appears to be that his detention violates his due process rights under the Fourteenth Amendment. (*See id.* at 12 ("Petitioner is suffering from an ongoing denial of his procedural due-process rights because of the unlawful indefinite detention, and he is likely to succeed on the merits of his verified petition for writ of habeas corpus.")).³ Specifically, Petitioner reasons that, because he is no longer "a National or Citizen of Romania, and no traveling papers will be issue[d] in order to remove Petitioner to Romania, Petitioner's detention became indefinite and [thus] unlawful." (*Id.* at 7). In support of this contention, Petitioner relies on *Zadvydas v. Davis*, 533 U.S. 678 (2001)—namely, the Supreme Court's holding therein that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute" (i.e., lawful), *id.* at 699. (*See* ECF No. 16 at 7).

Respondents point out, however, that Petitioner's proposition that the Romanian Government will not issue travel documents to Petitioner is "faulty." (ECF No. 18 at 5). In Respondents' Affidavit (ECF No. 18-7), the DHS avers that the Romanian Embassy informed the DHS that Petitioner "lost his Romanian citizenship and will need to be re-admitted." (*Id.* ¶ 5).

---

³ (*See also* ECF No. 16 at 12 ("Here[,] Petitioner also ha[s] a Due Process Right under [the] Fourteenth Amendment to present his case in the Court of Appeals without any government interference[] …. [T]he [G]overnment[,] w[h]ether intentional or unintentional[,] is violating Petitioner's due process rights by preventing Petitioner from gathering evidence, seek[ing] witnesses, and … finding proper representation for himself[] in order for this Petitioner to fully present his … argument in the Court of the Appeals.")).

The DHS further avers that "Romanian authorities are reviewing in more detail and will advise when the re-admittance process has been completed." (*Id.* ¶ 6). And "[b]ecause Romania has not denied Petitioner's citizenship or the issuance of a travel document to Petitioner, Petitioner's removal to Romania remains significantly likely in the reasonably foreseeable future." (*Id.* ¶ 7).

"In instances where an alien is unable to produce evidence demonstrating good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future, courts have sustained continuing periods of *detention pending removal* well beyond the six-month time frame described as presumptively reasonable by the Supreme Court in *Zadvydas*." *Kamara v. Warden, Clinton Cnty. Corr. Facility*, No. 1:21-CV-4, 2021 WL 1971502, at *9 (M.D. Pa. Apr. 12, 2021) (emphasis added) (collecting cases). Here, Petitioner has failed to produce evidence demonstrating good cause to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.[4] Conversely, the DHS has represented that Petitioner's removal is likely in the reasonably foreseeable future. Accordingly, Petitioner has failed to establish the likelihood of success on the merits of his claims. Therefore, the Court must deny his TRO Motion. *See Instant Air Freight Co.*, 882 F.2d at 800.[5]

This conclusion is congruent with the Third Circuit's decision to deny Petitioner's Motion

---

[4] To the extent that Petitioner has already been detained for almost 15 months, the Court notes that his detention has been detention pending a determination of removability, which has been prolonged in whole or in part by Petitioner's own conduct—that is, Petitioner's litigation over his detention and removability. *See supra* Section I. Therefore, the Court finds that the majority of Petitioner's time in ICE custody is not time spent in post-removal-period detention, and thus it does not count toward the running of the clock of *Zadvydas*'s presumptive six months. *See Zadvydas*, 533 U.S. at 697 ("[T]he statute before us applies not only to terrorists and criminals, but also to ordinary visa violators, and, more importantly, post-removal-period detention, unlike detention pending a determination of removability or during the subsequent 90–day removal period, has no obvious termination point." (citation omitted)).

[5] The Court notes that, although it does not engage in an analysis of the remaining three factors, Petitioner is likely unable to meet his burden on any of the TRO factors. For example, the fourth factor—the public interest—weighs heavily against Petitioner. Petitioner's previous 2003 convictions of aggravated felonies—namely, controlled substance trafficking, firearms offenses, forgery, and conspiracy—provide a legitimate basis for the DHS to conclude that Petitioner presents a public safety threat should he be released to the public immediately. (*See* ECF No. 18-8).

to Stay Removal. *Bodnari v. Att'y Gen.*, No. 24-2741, ECF No. 16 (3d Cir. Dec. 12, 2024) ("Petitioner has not shown a likelihood of success on the merits of his petition for review.").

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Petitioner's TRO Motion at ECF No. 16. An appropriate Order follows.

DATE: January 28, 2025

Stephanie L. Haines
United States District Judge